UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERGIN FINANCIAL, INC.,

    Plaintiff,

Case No. 05-70015

v.

Honorable John Corbett O'Meara

FIRST AMERICAN TITLE COMPANY, *et al*.,

    Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT FIRST AMERICAN TITLE COMPANY'S
DECEMBER 14, 2007 MOTION FOR SUMMARY JUDGMENT**

This matter came before the court on defendant First American Title Company's December 14, 2007 motion for summary judgment. Plaintiff filed a response January 4, 2008; and oral argument was heard January 17, 2008.

**BACKGROUND FACTS**

Plaintiff Bergin Financial is a mortgage lender that alleges it was the victim of real estate fraud by a number of parties, resulting in a loss of money on 61 loans it made to individuals purchasing single-home rental properties in the City of Detroit.

Defendant First America Title issued title commitments and title insurance policies for the property transactions at issue in this suit. Title insurance provides indemnification protection to purchasers of real property and their secured lenders for losses caused by defects of title or undisclosed liens or encumbrances on the property. Plaintiff admits there is no evidence of any title defects. All of the buyers acquired fee simple title to their properties, and Plaintiff's mortgage on each property was properly recorded, protecting Plaintiff's mortgage interest in each transaction.

Plaintiff alleges, however, that a First American Title policy issuing agent named Kevin Bluhm conspired with other defendants to defraud Plaintiff by falsifying documents necessary to close the subject transactions, resulting in Plaintiff making loans to unqualified borrowers secured by property that is alleged to be worth less than the loan amount. Kevin Bluhm is a also a defendant in this action, along with his company, Lincoln Title. All of the claims against First American Title are dependent upon the agency relationship between it and Bluhm. First American Title has moved for summary judgment on all of the claims, including those for common law fraud, breach of contract, negligent misrepresentation, civil conspiracy and violations of RICO.

## LAW AND ANALYSIS

The Policy Issuing Agency Contract between First American Title and Bluhm, dated October 8, 1993, limits the scope of the agency to the purpose of issuing title commitments and title insurance policies only. "Principal [First American Title] hereby appoints Agent to act for . . . Principal in transacting title insurance business, but ***only for the purposes and in the manner specifically set forth in this contract and for no other purpose and in no other manner whatsoever.***" Ex. E. The contract does not authorize Bluhm or Lincoln Title to close real estate transactions as an agent for First American Title. Defendant notes that in an article about mortgage scams, Plaintiff's previous counsel had written an article explaining,

> Under the agency agreement between the title insurer and its agent, the agent is generally only authorized to issue title commitments and policies, and is prohibited from conducting closing and escrow services within the scope of the agency. Since these services are performed outside the agent's express and implied actual authority, the principal is not liable for the agent's actions.

Richard J. Landau & Kristin M. Tsangaris, *The Mortgage Fraud Epidemic*, S&P's The Review of Banking and Financial Services, Vol. 22 No. 4, p. 4, April 1, 2006.

A person or entity may be an agent of a principal for one purpose but not the agent of the principal for another related purpose. Glidden Co. v. Jandernoa, 5 F. Supp. 2d 541 (W.D. Mich. 1998). Specifically, title insurance agents may also act as closing agents, but they are not acting within the scope of their authority for the title insurer when they do so. "Underwriting and agency agreement generally . . . limit the underwriter's responsibility for agents' activities as escrowees in real estate closings." Joyce D. Palomar, Title Insurance Law 2-12 (1994). Furthermore, "[i]n the absence of an insured closing letter, . . . a majority of cases hold that . . . the title insurer has no liability for fraud or other misconduct in connection with a closing." Landau & Tsangaris, *The Mortgage Fraud Epidemic*, supra.

In this case Bluhm's alleged fraudulent actions occurred while he was closing the loan transactions for the subject properties, activities he was not authorized to perform under his contract with First American Title. Indeed, when Bluhm acted as the closing agent, he was acting on behalf of Plaintiff, not on behalf of First American Title. Because any alleged fraud or misconduct committed by Bluhm occurred outside the scope of his authority as a First American Title policy issuing agent, his actions cannot be imputed to First American Title.

Moreover, Plaintiff has failed to present sufficient facts to prove the essential elements of its claims against First American Title. Count II alleges breach of contract, but only against Bluhm, not against First American Title.

Count III alleges civil conspiracy against First American Title, Lincoln Title, Bluhm, and other defendants. Plaintiff alleges that they "created, witnessed and notarized false and misleading documents . . ." and that they "had knowledge of the flip schemes, [and] were involved in prior schemes with [other defendants]." Complaint at ¶ 98. However, Plaintiff has presented no evidence

3

to show that First American Title had any contact with any party beside Bluhm. Moreover, Plaintiff has presented no evidence to show that First American Title knew about Bluhm's allegedly fraudulent or wrongful acts at the time those acts were committed, let alone produced evidence that it *conspired* with Bluhm to commit those acts.

Count IV alleges that all of the defendants, without naming any in particular, "either directly or through their employees and agents, made material misrepresentations of fact" which "involved incomplete, false, and misleading information concerning the creditworthiness of the Borrowers and the collateral value of the subject real estate." Id. at ¶ 104. There are no allegations regarding any false or misleading statements about title insurance made by either First American Title nor its title policy issuing agents.

Similarly, Plaintiff's negligent misrepresentation claim, alleged in Count V, makes no specific allegation regarding individual defendants. Again, there are no allegations about particular misrepresentations allegedly made by First American Title or its policy issuing agents.

Finally, Plaintiff's final two claims, Counts VI and VII, allege violations of 18 U.S.C. §§ 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). First American Title asserts that it was not part of any "enterprise" as that term is defined by statute. An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The United States Supreme Court has elaborated on the definition.

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. . . . [I]t is proved by evidence of ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. . . . The 'enterprise' is not the

4

> 'pattern of racketeering activity'; it is an entity separate and apart from the patter of activity in which it engages.

United States v. Turkette, 452 U.S. 576, 583 (1981).

In a case that involved a similar mortgage scam, the United States Court of Appeals for the Sixth Circuit explained:

> The association-in-fact enterprise alleged to exist in this case includes CommonPoint and its relationship with the numerous secondary lenders to which it sells customers' loans. The district court correctly recognized that the elements outlined above have been interpreted to require a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach. That is, simply conspiring to commit fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes. Plaintiffs' brief agrees, noting that 'the hallmark of a RICO enterprise is its ability to exist apart from the pattern of wrongdoing.' All that is required is some minimal level of organizational structure between the entities involved.

VanDenBroeck v. CommonPoint Mortgage Co., 210 F.3d 696, 699-700(6th Cir. 2000).

In this case there is no evidence that First American Title and the other defendants were organized as a group to conduct affairs separate from the pattern of alleged wrongdoing on a continuing basis. Therefore, First American Title is entitled to summary judgment on the RICO claims as well.

# ORDER

For the reasons set forth above and on the record January 17, 2008, it is hereby **ORDERED** that defendant First American Title Company's December 14, 2007 motion for summary judgment is **GRANTED.**

                                                      s/John Corbett O'Meara
                                                    United States District Judge

Date: January 29, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, January 29, 2008, by electronic and/or ordinary mail.

                                                      s/William Barkholz
                                                    Case Manager